# EXHIBIT B

# ESCROW AGREEMENT

THIS ESCROW AGREEMENT is made this 19 day of Feb, 2013, by and among Blackwood Energy, LLC and Pax Americana ("Purchaser"), Street Search, LLC, ("Street Search") and John Hanzel, Esq. ("Escrow Agent");

## BACKGROUND

WHEREAS, Purchaser and Seller are parties to that certain Purchase Agreement dated as of January 31, 2013 ("Purchase Agreement"); and

WHEREAS, pursuant to the Purchase Agreement, Purchaser is purchasing property of Seller; and

WHEREAS, Purchaser and Seller have agreed that, prior to Closing under the Purchase Agreement, three hundred thousand dollars ($300,000.00) shall be deposited with the Escrow Agent by Street Search and shall only be used to cover necessary fees for the successful Closing, and shall be returned to Street Search in full, plus fees in the amount of two hundred thousand dollars ($200,000.00), within five (5) days of Closing;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, and intending to be legally bound, the parties hereto hereby covenant and agree as follows:

1. Establishment of Escrow Fund

    1.1 The Escrow Agent acknowledges that it has established a separate account called the Seller Escrow Account ("Account"), and that Street Search has deposited into the Account the sum of three hundred thousand dollars ($300,000.00) ("Escrow Amount"). The Escrow Amount, together with all interest earned thereon, shall be referred to as the "Escrow Fund."

    1.2 The Escrow Agent shall retain the Escrow Fund subject to the terms and conditions hereof. The Escrow Fund will remain in escrow, and remain untouched until Escrow Agent has procured a financial commitment letter from a lending institution to Purchaser. The Escrow Fund is not to be drawn upon until this final commitment is received. Should the funding commitment not be obtained, the entire Escrow Fund shall be returned to Street Search within five (5) business days. All amounts and investments comprising the Escrow Fund shall be registered and held in the name of the Escrow Agent as Escrow Agent for Street Search.

2. Use and Distribution of the Escrow Fund

    2.1 The Escrow Fund is to only be used to cover necessary fees for the successful Closing. The Closing shall be within 45 days of receipt of the deposit in escrow. Should the Closing not take place within 45 days of deposit, Street Search may demand that the full Escrow Fund be returned. The Escrow Fund shall be returned within five (5) days of such demand. Within five (5) days of Closing, Escrow Agent shall transfer the Escrow Fund, in

1

addition to two hundred thousand dollars ($200,000.00) in fees, amounting to a total five hundred thousand dollars ($500,000.00), directly to Street Search.

3. <u>Escrow Agent</u>

3.1 The parties hereto nominate, constitute and appoint the Escrow Agent to act as escrow agent and to hold the Escrow Fund in the Escrow Account, upon the terms and conditions herein set forth.

3.2 The duties and responsibilities of the Escrow Agent hereunder shall be determined solely by the express provisions of this Escrow Agreement. The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no further duties or responsibilities shall be implied. The Escrow Agent shall not in any way be bound or affected by a notice of modification or cancellation of this Escrow Agreement unless written notice thereof is given to the Escrow Agent by Street Search, nor shall the Escrow Agent be bound by any modification of its obligations hereunder unless the same shall be consented to by the Escrow Agent in writing.

3.3 The Escrow Agent shall be entitled to rely upon any judgment, certification, demand or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any facts stated therein, the propriety or validity of the service thereof, or the jurisdiction of any court issuing any judgment or order.

3.4 The Escrow Agent shall not be under any duty to give the Escrow Fund any greater care than it gives its own similar property.

3.5 The Escrow Agent may act in reliance upon any instrument or signature reasonably believed by it to be genuine, and it may assume that any person purporting to give any notice or make any statement in connection with the provisions hereof has been duly authorized to do so.

3.6 In the administration of the Escrow Account, the Escrow Agent may execute any of its powers and perform its duties hereunder directly or through agents or attorneys and may, consult with counsel, accountants and other skilled persons to be selected and retained by it. The Escrow Agent may act in reliance upon advice of counsel in reference to any matter connected herewith and shall not be liable for any action taken or omitted in accordance with such advice.

3.7 The Escrow Agent shall not have any responsibility for the payment of taxes except with funds furnished to the Escrow Agent for that purpose. The parties hereto will provide the Escrow Agent with appropriate forms for tax identification number certification.

3.8 This Escrow Agreement sets forth exclusively the duties of the Escrow Agent with respect to any and all matters pertinent hereto. Except as otherwise expressly provided herein, the Escrow Agent shall not refer to, and shall not be bound by, the provisions of any other agreement.

2

3.9 The Escrow Agent shall not be liable, except for its own bad faith, negligence, fraud or willful misconduct, and, except with respect to claims based upon such bad faith, negligence, fraud or willful misconduct that are successfully asserted against the Escrow Agent in a court of competent jurisdiction.

3.10 The Escrow Agent agrees that Street Search may, at any time, remove it as Escrow Agent hereunder and substitute an individual or a bank or trust company for it, in which event the Escrow Agent, upon receipt of written notice thereof, shall account for and deliver to such substituted escrow agent all funds and obligations held by it, less any amounts then due and unpaid to it for fees and expenses as herein provided, and the Escrow Agent shall thereafter be discharged from all liability hereunder.

3.11 The Escrow Agent shall not be required to institute or defend any action involving any matters referred to herein, or which affect it or its duties or liabilities hereunder, unless or until requested to do so by any party to this Escrow Agreement and then only upon receiving full indemnity, in character reasonably satisfactory to the Escrow Agent, against any and all claims, liabilities and expenses, including reasonable attorneys' fees, expenses and costs of suit, in relation thereto.

3.12 Upon termination of this Escrow Agreement, the Escrow Agent may request from any and all of the parties hereto such additional assurances, certificates, satisfactions, releases and/or other documents as it may reasonably deem appropriate to evidence the termination of this Escrow Agreement.

4. Miscellaneous

4.1 The parties hereto agree that this Escrow Agreement shall be deemed to have been executed and delivered in the State of North Carolina and shall be governed and construed in accordance with the laws of such State without regard to its conflicts or choice of law provisions.

4.2 The parties hereto agree that any action concerning any and all claims, disputes or controversies arising out of or relating to this Escrow Agreement shall only be commenced in the State of North Carolina.

4.3 The parties hereto agree to execute and deliver any and all documents and to take such further action as shall be reasonably required to effectuate the provisions of this Escrow Agreement.

4.4 This Escrow Agreement contains the entire understanding of the parties hereto with respect to the subject matter herein contained and shall not be modified except by a writing signed by all the parties hereto.

4.5 This Escrow Agreement may be executed in one or more counterparts, all of which when taken together shall comprise one instrument.

3



4.6    Acting as the closing attorney, I have been told that there is a bank loan facility and I confirm there will be a sufficient credit line extended from the bank at closing to cover the purchase of the property and also the payment of $1.5 million to Jeff Podesta, which includes the escrow deposit of $300,000, $2 million for Pax Americana.

4.7    The Escrow Agent hereby acknowledges the two additional agreements between dated January 31, 2013 between John Scafidi and Pax Americana and among John Scafidi, Pax Americana, and Jeff Podesta.

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement the day and year first above written.

| WITNESS: | STREET SEARCH, LLC |
|---|---|
| *[signature]* | By: *[signature]* |
| WITNESS: | PAX AMERICANA |
| *[signature]* | By: *[signature]* 19/2/13 |
| WITNESS: | BLACKWOOD ENERGY, LLC |
| | By: *[signature: John P. Scafidi]* |
| WITNESS: | JOHN HANZEL, ESQ. |
| *[signature: Jeannette Volkser]* | By: *[signature]* |

4