IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:17-cv-00266-RJC-DSC

| | |
|---|---|
| JEFFREY PODESTA and STREET SEARCH, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JOHN F. HANZEL, ESQUIRE, JOHN F. HANZEL, P.A. ATTORNEYS AT LAW, JOHN P. SCAFIDI, HONEYWOOD ENERGY, LLC (formerly known as Blackwood Energy, LLC), JAYSON COLAVALLA, TONY C. SCOTT, SAMUEL V. WATKINS, a/k/a WATKINS V. SAMUEL, TALC PROPERTIES FL, LLC, and TALC PROPERTIES VENTURES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAYSON COLAVALLA'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6), Defendant Jayson Colavalla ("Colavalla") respectfully submits this Memorandum of Law in support of his Motion to Dismiss for Insufficient Service of Process and Failure to State a Claim, [Doc. 10], which seeks dismissal of all of the claims asserted by Plaintiffs Jeffrey Podesta ("Podesta") and Street Search, LLC ("Street Search") (jointly, "Plaintiffs") in their Amended Civil Action Complaint (the "Complaint"). [Doc. 1].

## I. WHY DISMISSAL IS APPROPRIATE

This lawsuit stems from Plaintiffs' failed attempt to partner with Defendants John Scafidi ("Scafidi") and John Hanzel ("Hanzel") to provide a down payment for the purchase of a coal mine in Pennsylvania. Plaintiffs allege that Scafidi and Hanzel breached contracts, made false representations, and withheld material information from them, which caused Plaintiffs to lose a

1

$300,000 escrow deposit. Colavalla was not a party to any agreement with Plaintiffs, did not make any representations to them, and owed no duties to them. Indeed, Plaintiffs only specifically mention Colavalla <u>5 times</u> in the entire 126-paragraph Complaint, and do not assert <u>any</u> facts to support their claims against Colavalla, instead relying on vague and conclusory generalizations designed to lump the defendants together under a conspiracy theory that is never explained, all for the purpose of unfairly associating Colavalla with Scafidi and Hanzel's bad conduct.

Dismissal is required because (1) Colavalla has not been served with any process; (2) Plaintiffs fail to plead specific facts supporting any of their claims against Colavalla; and (3) the face of the Complaint reveals that all of Plaintiffs claims other than fraud and unfair trade practices are time-barred by applicable statutes of limitation.

## II. FACTS[1]

Plaintiffs allege the following facts in their Complaint:

In 2011, Roman Lyniuk ("Lyniuk") approached Podesta about an opportunity to participate in the purchase of a coal mine in Pennsylvania. [Doc. 1 at 3]. Lyniuk put Podesta in touch with Scafidi who told Podesta that if he (Podesta) provided $300,000 as an "earnest capital down payment" on the sale of the mine, Scafidi would pay Podesta $1,500,000 upon the closing of the sale. <u>Id.</u> at 4. Hanzel told Podesta that Hanzel would review the closing documents, organize financing, and manage and control the escrow account for the closing. <u>Id.</u> Podesta trusted Hanzel because he is a lawyer.

---

[1] The facts set forth herein are taken exclusively from the Complaint and the documents attached thereto, and, for purposes of Colavalla's Motion to Dismiss for Insufficient Service of Process only, the Declaration of Jayson Colavalla, filed simultaneously herewith.

2

On January 13, 2013 and February 19, 2013, respectively, Street Search (Podesta's company), Pax Americana (Lyinuk's company) and Scafidi, on behalf of Honeywood Energy, LLC ("Honeywood"),[2] entered into two (2) contracts – the "January Agreement" and "Escrow Agreement" (Hanzel is also a party to the Escrow Agreement)[3] – pursuant to which Street Search agreed to deposit $300,000 with Hanzel in escrow (the "Escrow Funds"), to be used "to cover necessary fees for the successful Closing" on the sale of the coal mine. [Docs. 1 at ¶¶ 27, 34; 1-1, 1-2]. The Escrow Funds were to be returned to Street Search, along with a "fee" of $200,000 within five (5) days of the closing. [Doc. 1-2 at 2]. Under the January Agreement, Podesta was to receive a "bonus" payment of $1,000,000 "for use of the original [Escrow Funds]." [Doc. 1-1 at 2]. Colavalla is not a party to either agreement, and Plaintiffs do not allege that he had any role in their negotiation or execution.

Hanzel told Podesta that financing was in place and that Hanzel would manage the Escrow Funds and serve as the closing attorney. [Doc. 1 at ¶¶ 29-32]. He also provided Podesta with instructions for wiring the Escrow Funds to an escrow account Hanzel controlled. [Doc. 1 at ¶ 35]. On February 21, 2013, Street Search wired the Escrow Funds to Hanzel. [Doc. 1 at ¶ 36]. The next day, Podesta asked Scafidi for copies of the coal mine sales contract and closing documents, but Scafidi refused. [Doc. 1 at ¶¶ 40-41]. Although he promised to provide weekly updates to Plaintiffs, Hanzel never updated Plaintiffs on the status of the closing. [Doc. 1 at ¶¶ 43-44]. Plaintiffs do not allege that Colavalla was in any way involved in the foregoing communications or transfer of Escrow Funds.

---

[2] Plaintiffs contend "upon information and belief" that Honeywood "is owned by Defendants Scafidi, Colavalla, [Tony] Scott, and [Samuel] Watkins." [Doc. 1 at ¶ 9] (bracketed language added) (hereinafter, "Scott" and "Watkins," respectively).

[3] The agreements are attached to the Complaint as Exhibits A and B. [Docs. 1-1, 1-2].

3

On April 8, 2013, apparently dissatisfied with Hanzel/Scafidi's failure to provide copies of the closing documents, Plaintiffs asked Hanzel to return the Escrow Funds. Under the Escrow Agreement, the Escrow Funds were required to be returned to Street Search within five (5) days of this demand. Id. Hanzel did not, however, return the funds. On May 17, 2013, Plaintiffs sent Hanzel wiring instructions for the return of the Escrow Funds, and on June 4, 2013, Plaintiffs again demanded their return. [Doc. 1 at ¶¶ 62-63]. By letter dated June 6, 2013, Hanzel responded that he would return the Escrow Funds as soon as he received them "from the lender or the lender's intermediary . . . ." [Doc. 1-10 at 2]. Thus, as of this date, Plaintiffs knew that Hanzel no longer controlled the Escrow Funds. To date, Hanzel has not returned them.

Plaintiffs contend that, without their knowledge or authorization, Hanzel transferred $275,000 of the Escrow Funds to HSBC London Bank under the name "TALC Properties FL," a company in which Colavalla, Watkins and Scott are members, and retained $25,000 of the Escrow Funds for himself. [Doc. 1 at ¶¶ 66-67]. In releasing the Escrow Funds without their knowledge, Plaintiffs contend that Hanzel violated the Escrow Agreement and wrongfully misappropriated $25,000. Id.

In August 2014, Podesta's legal counsel spoke to the attorney for the owner of the coal mine, and was informed that the sales contract between Scafidi and the owner dated back to 2011, but was "voided due to Scafidi's failure to transfer any money to the [owner]." [Doc. 1 at ¶¶ 70-73]. The owner's attorney also told Podesta's attorney that there were never any signed documents for the sale of the coal mind to Scafidi. Id.

Based on these facts, Plaintiffs filed a Complaint on May 18, 2017 against nine (9) defendants, including Colavalla. Despite the fact that Colavalla is not a party to the January Agreement or Escrow Agreement, was not involved in transferring the Escrow Funds to Hanzel,

4

did not control the escrow account, did not transfer the Escrow Funds from that account, and did not make any representations or promises to Plaintiffs in relation to the sale of the coal mine, Plaintiffs assert seven (7) claims against Colavalla: fraud/fraudulent misrepresentation, breach of contract, promissory estoppel, unjust enrichment, civil conspiracy/aiding and abetting, conversion and violation of the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("UDTPA"). As set forth below, Colavalla is entitled to a dismissal of all claims.

### III. ARGUMENT

**A. Colavalla Is Entitled To Dismissal Based On Insufficient Service Of Process**

Plaintiffs have failed to properly serve Colavalla with any process in this action. Plaintiffs' claims against him must be dismissed accordingly. Pursuant to Fed. R. Civ. P. 12(b)(5), a defendant may assert the defense of insufficient service of process by motion, which defense address deficiencies in "the actual service of the pleadings upon the parties." Brown v. Charlotte Rentals LLC, 2015 U.S. Dist. LEXIS 98337, *6 (W.D.N.C. July 28, 2015) (Whitney, C.J.).[4] Process may be served on an individual pursuant to Fed. R. Civ. P. 4(e) by handing the person copies of the summons and complaint, leaving the summons and complaint at the person's house or place of abode, serving the person's authorized agent, or serving the person in compliance with the laws of the state where the action is brought or where service is accomplished. Fed. R. Civ. P. 4(e) (2017). While North Carolina permits service of process by certified mail, service is only perfected upon actual delivery to the defendant. N.C.G.S. § 1A-1, Rule 4(j)(1)(c) (2017) (authorizing service "[b]y mailing a copy of the summons and of the

---

[4] Unless specified otherwise, all ellipses, emphasis, and alterations appearing in quotations herein are added, and all internal citations, internal quotation marks, quoted sources, and footnotes are omitted.

5

complaint, registered or certified mail, return receipt requested, addressed to the party to be served, <u>and delivering to the addressee</u>.").

Plaintiffs filed an Affidavit of Service on August 9, 2017 asserting that Colavalla was served with process "by mailing a copy of the Summons and Complaint by certified mail, return receipt requested," to 20324 Carrington Trace Drive, Cornelius, NC 28031 (the "Cornelius address"), "as evidenced by the attached return receipts." [Doc. 8]. Plaintiffs did not, however, attach any receipts to the Affidavit of Service to evidence service. Indeed, Colavalla does not live at the Cornelius address, has never lived there, and has never been served with process there (or anywhere else). <u>See</u> <u>Declaration of Jayson Colavalla</u>, ¶¶ 3-5. [Doc. 12]. Plaintiffs do not contend that they personally delivered process to Colavalla, left process at his residence in Florida, served his agent with process, or otherwise served Colavalla in accordance with North Carolina law. "When service of process is insufficient, a court lacks personal jurisdiction over the defendant." <u>McDaniel v. Greyhound Lines, Inc.</u>, No. 3:08-cv-130-FDW, 2008 U.S. Dist. LEXIS 58299, at *15 (W.D.N.C. July 7, 2008). Plaintiffs have not properly served Colavalla and their claims against him should be dismissed. <u>Id.</u> (dismissing claims for insufficient service).

### B. <u>12(b)(6) Standard</u>.

Alternatively, all claims against Colavalla should be dismissed pursuant to Rule 12(b)(6). <u>Garvey v. Seterus, Inc.</u>, No. 5:16-cv-00209-RLV, 2017 U.S. Dist. LEXIS 97373, at *14 (W.D.N.C. June 23, 2017) ("[A] court that concludes that service was not properly completed for purposes of Rule 12(b)(5) may proceed and consider a defendant's alternative argument for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."). A motion to dismiss under Rule 12(b)(6) is intended to "test the legal sufficiency of the complaint, not to resolve conflicts

6

of fact or to decide the merits of the action." Ward v. Sec. Atl. Mortg. Elec. Registration Sys., 858 F.Supp.2d 561, 564 (E.D.N.C. 2012). A complaint, therefore, must allege each necessary element of the claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562, 127 S.Ct. 1955 (2007). In addition, the complaint must allege facts that, if true, state a claim that is "plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 129 S.Ct. 1937 (2009).

Particularly important for purposes of this case, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," id., and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); Twombly, 550 U.S. at 555 (holding that, to survive a motion to dismiss, a plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level.").

### C. All Of Plaintiffs' Claims Against Colavalla Fail as a Matter of Law and Should Be Dismissed.

#### 1. Plaintiffs do not allege fraud with particularity, or that Colavalla communicated any fraudulent representations to them.

To state a valid fraud claim against Colavalla, Plaintiffs must allege that: (1) he made a representation relating to some material past or existing fact; (2) the representation was false; (3) he knew it was false or made it recklessly; (4) he made it with the intention that it be acted upon by Plaintiffs; (5) Plaintiffs reasonably relied upon it and acted upon it; and (6) they suffered injury as a result. Warfield v. Hicks, 91 N.C. App. 1, 8, 370 S.E.2d 689, 692-693 (1988). In addition, Plaintiffs must allege with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he

7

obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). "Mere generalities and conclusory allegations of fraud will not suffice." Moore v. Wachovia Bank & Trust Co., 30 N.C. App. 390, 391, 226 S.E.2d 833, 835 (1976). Furthermore, "where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." Andrews v. Fitzgerald, 823 F. Supp. 356, 373 (M.D.N.C. 1993).

Here, Plaintiffs do not allege that they ever *spoke* to Colavalla, orally or in writing, let alone that he made representations of fact (false or otherwise) to them. Nor do they allege that they relied to their detriment on anything he said. Rather, they claim that Scafidi and Hanzel made representations that induced them to transfer the Escrow Funds they now seek to recover. [Doc. 1 at ¶¶ 19-20, 22, 29-32]. Despite not alleging that Colavalla participated in any of that conduct, Plaintiffs contend in conclusory fashion that "*Defendants* collectively intentionally misrepresented and/or omitted material facts to Plaintiff when it was communicated to Plaintiffs that there was a pending sale of the PA property when in reality the transaction had been voided in 2011." [Doc. 1 at ¶ 84] (emphasis added).

The Court may disregard Plaintiffs' conclusory statements about Colavalla, as "[m]ere generalities and conclusory allegations of fraud will not suffice." Sharp v. Teague, 113 N.C. App. 589, 439 S.E.2d 792 (1994). Because Plaintiffs do not identify a single representation uttered by Colavalla, they plainly assert no valid fraud claim against him and that claim should be dismissed. See, e.g., Taylor v. Bettis, 976 F. Supp. 2d 721, 741 (E.D.N.C. 2013) (dismissing fraud claim where the Complaint "failed to assert any factual allegations which would establish the elements of fraud."), aff'd, 2017 U.S. App. LEXIS 12626 (4th Cir. N.C. July 14, 2017).

8

### 2. Plaintiffs' breach of contract claim fails because Colavalla is not a party to the January Agreement or Escrow Agreement.

"The elements of a breach of contract claim are (1) the existence of a valid contract and (2) breach of the terms of that contract." Wooton v. CL, Ltd. Liab. Co., No. 2:09-CV-34-FL, 2010 U.S. Dist. LEXIS 101182, at *14 (E.D.N.C. Sep. 27, 2010), aff'd, 504 Fed. App'x 220 (4th Cir. 2013). Although Plaintiffs vaguely allege that "Plaintiffs *and Defendants* were parties to the aforesaid express contract(s) . . . and/or contract(s) and/or warrant(ies) implied at law," [Doc. 1 at ¶ 89] (emphasis added), Plaintiffs only identify two (2) contracts in their Complaint—the January Agreement between Street Search, Pax Americana and Scafidi, and the Escrow Agreement between Street Search, Pax Americana, Blackwood and Mr. Hanzel, [Doc. 1 at ¶ 27, ¶ 34; Docs. 1-1, 2-2]—and Colavalla is not a party to either one.

For purposes of Rule 12(b)(6), "the court need not accept as true any allegations in the complaint . . . that are directly contradicted by the exhibits." Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 581 (M.D.N.C. 2003) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) for the proposition that, "[i]n the event of conflict between the bare allegations of the complaint and any [attached] exhibit . . . the exhibit prevails.") (alterations in original). Of course, a comparison of Plaintiffs' allegations with the contracts, [Docs. 1-1, 2-2], makes clear that Colavalla is not a party to either agreement, and is not even referenced in them. Where, as here, a defendant is "not a party to the contract, as a matter of law he cannot be held liable for any breach that may have occurred." Canady v. Mann, 107 N.C. App. 252, 259, 419 S.E.2d 597, 601 (1992). Plaintiffs' breach of contract claim should be dismissed accordingly.

9

### 3. North Carolina does not recognize an affirmative claim for promissory estoppel.

There are two (2) types of promissory estoppel: "defensive" promissory estoppel and "offensive" or "affirmative" promissory estoppel. "Defensive promissory estoppel has been recognized by North Carolina Courts in limited circumstances where there has been an intended abandonment of an existing right by the promisee, such as a promise by a landlord to waive the written notice requirement under a lease." River's Edge Pharm., LLC v. Gorbec Pharm. Servs., No. 1:10CV991, 2012 U.S. Dist. LEXIS 57969, at *31-32 (M.D.N.C. Apr. 25, 2012). Offensive promissory estoppel is where "a promisee attempts to create a contract which would not exist without the application of promissory estoppel" by, for instance, "supply[ing] a missing contract term . . . ." Id. at *32. "North Carolina courts do not recognize a claim for this type of 'offensive' promissory estoppel." Id.; see also Giuliani v. Duke Univ., No. 1:08CV502, 2010 U.S. Dist. LEXIS 32691, at *29 (M.D.N.C. Mar. 30, 2010) ("North Carolina does not recognize the affirmative use of promissory estoppel to substitute for a missing element of a contract.").

Here, Plaintiffs are attempting to use promissory estoppel affirmatively by claiming that Defendants made certain unidentified "promises" upon which Plaintiffs "justifiably relied" by "changing their position." [Doc. 1 at ¶¶ 94-95]. Because North Carolina does not recognize affirmative promissory estoppel, this claim must be dismissed. E.g., River's Edge Pharm., LLC, supra (dismissing affirmative promissory estoppel claim). Even if North Carolina did recognize such a claim, Plaintiffs do not identify the "promises" Defendants are alleged to have made, separate and apart from the written agreements to which Colavalla is not a party. Thus, it is clear that Plaintiffs' promissory estoppel claim is nothing more than a restatement of Plaintiffs' deficient breach of contract claim and should be dismissed.

10

### 4. Plaintiffs' unjust enrichment claim fails as a matter of law.

The Court should dismiss Plaintiffs' unjust enrichment claim because (1) there were express agreements between Plaintiffs and other defendants that preclude an unjust enrichment claim; and (2) Plaintiffs do not allege that they conferred a benefit on Colavalla, which is a necessary element of the claim. "'In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party.'" Taylor, 976 F. Supp. 2d at 742 (quoting Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)). "Thus, a plaintiff must allege that he or she conferred a benefit upon the defendant; the defendant consciously accepted the benefit, and the benefit was not gratuitous." Id.

Plaintiffs' unjust enrichment claim (which is not pled in the alternative) fails as a matter of law because Plaintiffs admit that they entered into two agreements with other defendants that govern the permitted uses of (and restrictions on) the Escrow Funds, and "recovery under quantum meruit is not applicable where there is an express contract." See, e.g., Vetco Concrete Co. v. Troy Lumber Co., 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962) ("It is a well established principle that an express contract precludes an implied contract with reference to the same matter . . . . There cannot be an express and an implied contract for the same thing existing at the same time."); McManus v. GMRI, Inc., No. 3:12-CV-009-DCK, 2012 U.S. Dist. LEXIS 92094, at *25 (W.D.N.C. July 3, 2012) ("In the present case, because all of the facts pleaded by Plaintiff allege the existence and validity of a contract between the parties, Plaintiff's claim for unjust enrichment must fail as a matter of law.").

The unjust enrichment claim also fails because Plaintiffs do not allege that they conferred any benefit on Colavalla, which is an essential element of the claim. Taylor, 976 F. Supp. 2d at 742 ("With no allegation that Plaintiffs conferred a benefit on the E&D Defendants, the unjust

11

enrichment claim must be dismissed."). Rather, Plaintiffs contend that they transferred the Funds to *Hanzel*, who violated the Escrow Agreement by releasing them "to HSBC London Bank under the name 'TALC Properties FL' of which Colavalla, Watkins, and Scott are members." [Doc. 1 at ¶ 56]. Even accepting this allegation as true, N.C. Gen. Stat. § 57D-3-30 (2017) provides that, "[a] person who is an interest owner, manager, or other company official is not liable for the obligations of the LLC solely by reason of being an interest owner, manager, or other company official." Because Plaintiffs do not seek to pierce TALC Properties FL's corporate veil, Colavalla's status as a member of TALC Properties FL does not, standing alone, make him liable for the transfer of the Escrow Funds. In the absence of any allegations that Plaintiffs conferred a benefit on Colavalla, the unjust enrichment claim must be dismissed.

### 5. Plaintiffs failed to plead facts supporting their civil conspiracy/aiding and abetting claim.[5]

"The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do an lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." Privette v. Univ. of N. Carolina at Chapel Hill, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989). There is no independent claim for civil conspiracy in North Carolina. Rather, a civil conspiracy claim must be based on underlying wrongful conduct because the "charge of conspiracy itself does nothing more than associate the defendants together and perhaps liberalize

---

[5] Plaintiffs denominated Count VII of the Complaint, "Civil Conspiracy/Aiding & Abetting." [Doc. 1, p. 14]. While North Carolina courts recognize a claim for civil conspiracy, North Carolina does not recognize any legally cognizable claim for "aiding and abetting." Some states recognize a claim for aiding and abetting a breach of fiduciary duty, but North Carolina is not one of them. See, e.g., Laws v. Priority Tr. Servs. of N.C., 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009) ("The court finds that no such cause of action [for aiding and abetting a breach of fiduciary duty] exists in North Carolina."), aff'd, 375 Fed. Appx. 345, 349 (4th Cir. 2010). Thus, Colavalla analyzes Count VII as asserting a traditional claim for civil conspiracy.

12

the rules of evidence to the extent that under proper circumstances the acts and conduct of one might be admissible against all." S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC, 189 N.C. App. 601, 608, 659 S.E.2d 442, 449 (2008). If the underlying claim fails, the conspiracy claim fails with it. Strickland v. Hedrick, 194 N.C. App. 1, 19, 669 S.E.2d 61, 73 (2008)

As set forth herein, all of Plaintiffs' underlying claims against Colavalla fail; therefore, the conspiracy claim fails with them. In addition, Plaintiffs assert mere legal conclusions regarding the elements of civil conspiracy, but do not allege how the conspiracy was formed, when it was formed, by whom, where or why. In other words, Plaintiffs have not pled any facts to support the *existence* of a conspiracy between Colavalla and the other defendants. Rather, Plaintiffs merely make the conclusory assertion that "Colavalla conspired with Hanzel and the other Defendants and knew that neither the Agreement of Sale, the loan documents, nor the closing documents existed," and that "Defendants committed civil conspiracy when they pursued the common goal of pecuniary gain when they deceived Plaintiffs that resulted in the Plaintiffs' loss of at least $300,000." [Doc. 1 at ¶¶ 80, 114].

This is nothing more than an incomplete recitation of the legal elements for conspiracy claim, and is woefully insufficient to state a valid claim against Colavalla. Iqbal, 556 U.S. at 663 (recognizing that, for 12(b)(6) purposes, "mere conclusions" are "not entitled to the assumption of truth."); see also Garvey, 2017 U.S. Dist. LEXIS 97373, at *34 ("In the absence of factual allegations, Plaintiff's unadorned labels and conclusions do not satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2)."). Plaintiffs do not allege a single overt act committed by Colavalla in furtherance of the alleged conspiracy, which is fatal to their claim. See, e.g., Shope v. Boyer, 268 N.C. 401, 405, 150 S.E.2d 771, 774 (1966) (holding that a Complaint alleging civil

13

conspiracy must allege facts—including overt acts—that a conspiracy existed, rather than mere legal conclusions, to avoid dismissal.). The conspiracy claim should therefore be dismissed.

### 6. Plaintiffs' conversion claim fails as a matter of law.

"The tort of conversion is well defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Lake Mary L.P. v. Johnston, 145 N.C. App. 525, 531-32, 551 S.E.2d 546, 552 (2001). "It is clear then that two essential elements are necessary in a complaint for conversion -- there must be ownership in the plaintiff and a wrongful conversion by defendant." Id. Here, Plaintiffs allege that *Hanzel* converted the Escrow Funds by transferring them to a bank in London under TALC Properties FL's name. [Doc. 1 at ¶ 56]. Plaintiffs do not allege that Colavalla took part in the transfer, or that he ever received the Escrow Funds. It is axiomatic that, if Colavalla never received the funds, he cannot have converted them. The conversion claim should be dismissed.

### 7. Plaintiffs' UDTPA claim fails as a matter of law.

"To set out a claim for unfair and deceptive trade practices, a plaintiff must allege that (1) defendant has committed unfair or deceptive acts or practices; (2) defendant's conduct was in commerce or affected commerce; and (3) defendant's conduct caused injury to plaintiff." Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 417, 537 S.E.2d 248, 266 (2000). "Before a plaintiff may avail itself of the Act's remedies, it must prove that a defendant's conduct falls within the statutory framework allowing recovery." White v. Thompson, 364 N.C. 47, 51, 691 S.E.2d 676, 679 (2010). "Whether a commercial act or practice violates G.S. § 75-1.1 is a question of law." Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

14

To the extent Plaintiffs' UDTPA is predicated on any of its underlying claims, because those claims fail against Colavalla for the reasons described above, the UDTPA claim fails with them. However, even if the Court construes Plaintiffs' UDTPA claim as a standalone claim, the allegations in paragraphs 120-127 of the Complaint are generic legal allegations and conclusions – not <u>facts</u> from which a jury could find Colavalla liable for unfair or deceptive acts or practices. While Plaintiffs use a variety of adjectives and conclusory statements in paragraphs 120-127 to describe the unspecified "acts" and "business transactions" in which Colavalla allegedly engaged, these allegations are conclusory recitations of the elements of the claim that cannot withstand a motion to dismiss. <u>See</u> <u>Bell v. Disner</u>, 2015 U.S. Dist. LEXIS 4320, *9-10 (W.D.N.C. Jan. 14, 2015) ("While Defendants describe the Receiver's conduct with a variety of disparaging adjectives, including 'illegal, offends public policy and is immoral, unethical, oppressive, unscrupulous, and deceptive,' such allegations are conclusory and speculative and are therefore insufficient to withstand a motion to dismiss."). Moreover, Plaintiffs do not plead any facts that rise to the level of "egregious" or "aggravating circumstances." The UDTPA claim should be dismissed accordingly.

### D. All Of Plaintiffs' Claims Other Than Fraud And Violation Of The UDTPA Are Time-Barred.

All of Plaintiffs' claims against Colavalla other than fraud and violation of the UDTPA should be also be dismissed because they are time-barred by applicable statutes of limitations. "A motion to dismiss under Rule 12(b)(6) is an appropriate method of determining whether the statutes of limitation bar plaintiff's claims if the bar is disclosed in the complaint." <u>Carlisle v. Keith</u>, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005); <u>accord</u> <u>Dean v. Pilgrim's Pride Corp.</u>, 395 F.3d 471, 474 (4th Cir. 2005). Each of Plaintiffs' time-barred claims is governed by a three-year statute of limitations. <u>See</u> N.C. Gen. Stat. § 1-52(1) (breach of contract); <u>Martin</u>

15

Marietta Materials, Inc. v. Bondhu, LLC, 241 N.C. App. 81, 772 S.E.2d 143, 146 (2015) (citing N.C. Gen. Stat. §1-52(1)) (unjust enrichment); Carlisle, 169 N.C. App. at 685, 614 S.E.2d at 549 (citing N.C. Gen. Stat. § 1-52(5)) (civil conspiracy); Marzec v. Nye, 203 N.C. App. 88, 96, 690 S.E.2d 537, 543 (2010) (conversion). The Complaint discloses facts clearly establishing that these claims are time-barred.

### 1. Plaintiffs' breach of contract claim is time-barred.

Plaintiffs' breach of contract claim is predicated on Defendants' alleged refusal to return the Escrow Funds. [Doc. 1 at ¶¶ 39, 50-52]. Plaintiffs admit that the Escrow Agreement required the return of the Escrow Funds within five (5) days of demand, and that Plaintiffs made such a demand on April 8, 2013. [Doc. 1 at ¶¶ 39, 50]. Thus, the alleged breach was apparent as of April 13, 2013, when the Escrow Funds had not been returned to them. At the very latest, Plaintiffs knew of the breach on June 6, 2013, when they allege that Hanzel wrote a letter to Plaintiffs acknowledging the unauthorized transfer of the Escrow Funds. [Doc. 1, ¶ 64]. Because Plaintiffs filed their Complaint on May 18, 2017, almost four years after knowledge of the breach, Plaintiff's breach of contract claim is time-barred and must be dismissed.

### 2. Plaintiffs' unjust enrichment claim is time-barred.[6]

Plaintiffs' claim for unjust enrichment is premised on Defendants purportedly gaining a benefit from Hanzel's wrongful disbursement of the Escrow Funds. Plaintiffs admit that they knew Hanzel had transferred the Escrow Funds to a "bank or intermediaries" on or about April 8, 2013, when Hanzel initially responded to Plaintiffs' demand that the Escrow Funds be returned. [Doc. 1 at ¶¶ 49-51]. They also knew this from Hanzel's June 6, 2013 letter, in which he "acknowledged the unauthorized transfer of the Escrow Funds . . . ." [Docs. 1 at ¶ 64 and 1-10].

---

[6] As noted previously, North Carolina does not recognize an offensive claim for promissory estoppel. Accordingly, there is no applicable statute of limitations for a non-existent claim.

16

As both dates are well beyond three (3) years from the date Plaintiffs filed their Complaint, the unjust enrichment claim is time-barred.

### 3. Plaintiff's civil conspiracy claim is time-barred.

Because Plaintiffs' claim for civil conspiracy is based on the wrongful conduct underlying Plaintiffs' other claims, each of which is time-barred as explained herein, there is no independent conduct which separately brings a civil conspiracy claim within the statute of limitations. Thus, like Plaintiffs' other claims, Plaintiffs' civil conspiracy claim is time-barred and must be dismissed.

### 4. Plaintiffs' conversion claim is time-barred.

"[T]he statute of limitations for conversion generally begins running at the time a defendant asserts dominion over the property," rather than when the plaintiff discovers the conversion." Marzec v. Nye, 203 N.C. App. 88, 96, 690 S.E.2d 537, 543 (2010); see also First Investors Corp. v. Citizens Bank, Inc., 757 F. Supp. 687, 690-91 (W.D.N.C. 1991), aff'd per curiam, 956 F.2d 263 (4th Cir. 1992). Plaintiffs allege that Defendants wrongfully converted the Escrow Funds to their own use. [Doc. 1 at ¶ 117]. Any conversion necessarily happened on the date the Escrow Funds were transferred out of Hanzel's escrow account, i.e., on or about April 8, 2013. This conversion occurred more than four (4) years prior to the filing of the Complaint. Plaintiffs' conversion claim is accordingly time-barred.

## IV. CONCLUSION

Based on the foregoing, Colavalla respectfully requests that the Court dismiss all of Plaintiffs' claims against Colavalla, with prejudice.

Respectfully submitted, this 21st day of August, 2017.

    s/ Jon P. Carroll
Jon P. Carroll, N.C. State Bar No. 33850
Jennifer M. Houti, N.C. State Bar No. 45442
James, McElroy & Diehl, P.A.
600 South College Street
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 350-9317
Email:  jcarroll@jmdlaw.com
       jhouti@jmdlaw.com
*Attorneys for Defendant Jayson Colavalla*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAYSON COLAVALLA'S MOTION TO DISMISS** has this date been electronically filed with the Clerk of Court using the CM/ECF system, and has been served on all parties via first class mail, sufficient postage prepaid, and addressed as follows:

| | |
|---|---|
| Michael Gray Gibson<br>Dean & Gibson, LLP<br>301 S. McDowell St., Suite 900<br>Charlotte, NC 28204<br>*Attorneys for Plaintiffs Jeffrey Podesta and Street Search, LLC* | John F. Hanzel<br>John F. Hanzel, P.A.<br>19425-G Liverpool Parkway<br>Cornelius, NC 28031<br>*Attorneys for John F. Hanzel and John F. Hanzel, P.A.* |
| John P. Scafidi<br>18033 SW 115 Court<br>Miami, FL 33187 | Honeywood Energy, LLC<br>Attn: Officer, Director or Managing Agent<br>19425-G Liverpool Parkway<br>Cornelius, NC 28031 |
| Tony C. Scott<br>400 West Denny Avenue<br>Pinebluff, NC 28373-8218 | Samuel V. Watkins<br>606 Grantham Lane<br>Charlotte, NC 28262-1619 |
| TALC Private Ventures, LLC<br>Attn: Officer, Director or Managing Agent<br>50 Biscayne Blvd.<br>Suite 510<br>Miami, FL 33132 | TALC Properties FL, LLC<br>Attn: Officer, Director or Managing Agent<br>50 Biscayne Blvd.<br>Suite 510<br>Miami, FL 33132 |

This 21st day of August, 2017.

    s/ Jon P. Carroll
Jon P. Carroll, N.C. State Bar No. 33850
Jennifer M. Houti, N.C. State Bar No. 45442
James, McElroy & Diehl, P.A.
600 South College Street
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 350-9317
Email: jcarroll@jmdlaw.com
      jhouti@jmdlaw.com
*Attorneys for Defendant Jayson Colavalla*